IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,455






EX PARTE ARTHUR LEE WILLIAMS, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


CAUSE NO. 354897-A IN THE 208TH DISTRICT COURT


FROM HARRIS COUNTY





 Keasler, J., filed a concurring opinion, in which Hervey, J., joined.


 To prove ineffective assistance of counsel under Strickland v. Washington, (1) an
applicant must demonstrate that counsel's performance was deficient and that the deficiency
prejudiced the defense. (2) Assuming Arthur Lee Williams has established that counsel's
performance was deficient because counsel failed to investigate and present mitigating
evidence at the punishment phase, I agree with the majority that Williams has failed to
establish resulting prejudice. I write separately to emphasize the weakness of the habeas
evidence in support of Williams's claim of prejudice. It is not reasonably probable that the
outcome of Williams's sentencing would have been different had this evidence been
admitted.

 Counsel's errors prejudice the defense when they deprive an applicant of a fair
proceeding. (3) Establishing prejudice requires showing "a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different. A
reasonable probability is a probability sufficient to undermine confidence in the outcome." (4) 
"[T]he difference between Strickland's prejudice standard and a more-probable-than-not
standard is slight and matters 'only in the rarest case.' The likelihood of a different result
must be substantial, not just conceivable." (5)

 Because Williams complains of counsel's failure to investigate and offer mitigating
evidence, he must show that had counsel presented the available mitigating evidence, it is
reasonably probable that at least one juror would have decided the issues differently. (6) "In
assessing prejudice, we reweigh the evidence in aggravation against the totality of available
mitigating evidence," (7) including the evidence at trial and the habeas evidence. (8) We consider
the weight of the evidence, not just its relevance or admissibility. (9)

 The State admitted the following evidence in aggravation: Eight witnesses testified
that Williams had a bad reputation for being peaceable and law-abiding. Officer Michael
Blood, who apprehended Williams, testified that he stopped Williams's car in Edina,
Minnesota. Williams exited his car, with one hand in his pocket, and walked toward Officer
Blood's vehicle. After Williams was handcuffed, Officer Blood found an empty holster on
Williams's person and bullets in his pockets. The police frisked the passenger who was
riding in Williams's car, and found a pistol in her possession. The pistol, which fit the
holster Williams was wearing, had been reported stolen from Burger Brothers Sporting
Goods in Edina. Gregory John Lonke, manager of Burger Brothers, testified that the pistol
found on Williams's passenger had been stolen during the break-in at his store. 

 Adline Rivard's testimony followed Lonke's. She testified that one morning around
4:00 a.m. while she was working at a Holiday Inn, Williams robbed her at gunpoint. She
stated that he jumped over the counter, put his hand over her mouth, put a gun to her head,
tied her up, and then took money from the register. Juan Jorge testified after Rivard. He laid
the foundation for the introduction of Williams's documented criminal history, which
included two convictions for aggravated robbery, a conviction for escape from custody, and
a conviction for aggravated criminal damage to property. 

 Counsel presented nothing in Williams's defense at the punishment hearing, but he
asked the jury to consider all of the evidence admitted at the guilt phase. The guilt-phase
evidence showed that Williams had close relationships with his family; was twenty-two years
old at the time of the offense; had expressed remorse after the offense; had obtained a GED;
and had taken college courses while he was previously incarcerated. 

 On habeas, Williams only presented two affidavits to support his claim in mitigation. 
One affidavit was from Joyce Williams, Williams's mother, and the other was from Deborah
Williams, one of Williams's sisters. Joyce's affidavit reads as follows:

 [Williams]'s father and I were divorced before [Williams] was born. 
I raised him as a single parent, although his father would occasionally stay in
the home. His father was an alcoholic who was often in prison and jail. When
he stayed with us, he would often beat me. He would then leave the home, but
inevitably would return and beat me again. [Williams], our only son, was
exposed to his father's constant abuse. 

 Because [Williams]'s father was a poor role model and I was often in
poor health, [Williams] had little parental supervision. This led him to follow
older teenagers, usually into trouble. He was often beaten and bullied by
others. At an early age he was exposed to the drugs which were prevalent in
our community. He abused both alcohol and drugs. Although he became
chemically dependent, he never received any treatment.

 Williams had many good qualities. As a young boy, he was active in
the Boy Scouts and played on teams in hockey, basketball and baseball. He
loved animals. He obtained a GED at age 18 and took college courses while
in prison. He was an avid reader, wrote poetry and was adept with computers. 
He pursued numerous cultural interests, such as crafts, photography,
calligraphy, art, music and dancing. Most important, he was a devoted son and
brother who cared deeply about his family.

Deborah's affidavit was almost identical; she repeated the same general facts but from her
point of view. Joyce and Deborah stated that they had been present and willing to testify at
Williams's trial. 

 I would not give much weight to these affidavits. They contain only generalized
statements and subjective descriptors, such as "often," "constant," and "usually." Neither
affidavit specifically describes or illustrates, for example, the family abuse; how "often"
Williams was bullied; what kind of drugs Williams abused; how often Williams abused those
drugs and alcohol; or how Williams would get "into trouble." They also failed to explain
how Williams demonstrated that he "was a devoted son and brother who cared deeply about
his family." Moreover, the affidavits speculate that Williams became "chemically
dependent" on alcohol and drugs. The affidavits are almost word-for-word, suggesting that
Joyce and Deborah had nothing more specific or unique to add to the other's testimony. 
Because the affidavits are so general and duplicative of each other, the evidence is weak and
unlikely to have persuaded a juror to decide the issues differently. (10) 

 The dissent concludes that the mitigating evidence found in the habeas record
"substantially alters the sentencing profile that was presented to the jury" and as such
"establishes a probability of a different outcome sufficient to undermine confidence in the
jury's imposition of the death penalty." But it reaches this conclusion without looking
through the proper lens of Strickland's prejudice analysis in this context: that but for his
counsel's deficiency, there is a reasonable probability he would have received a different
sentence. (11) To support its conclusion, the dissent analogizes this case to Porter v.
McCollum. (12) 

 The record in Porter stands in sharp contrast to the record before us today. The Porter
Court indeed did find the required prejudice because the habeas evidence "described his
abusive childhood, his heroic military service and the trauma he suffered because of it, his
long-term substance abuse, and his impaired mental health and mental capacity." (13) But it did
so (1) because the record significantly and substantially supported these claims and (2) only
after balancing the mitigation evidence in its entirety against the introduced aggravating
factors. The record in Porter contained depositions from Porter's brother and sister
describing his abusive childhood including the frequency of his abuse, details of particular
abusive episodes, and routinely witnessing his father abuse his mother resulting in substantial
injury. (14) The record also contained testimony from Porter's commanding officer who
recounted, in vivid detail, Porter's traumatic experience both during the Korean War and its
lasting effects. (15) And according to Porter's brother, Porter began drinking heavily and would
often get into fights without remembering them. (16) Further, there was testimony from a
neuropsychologist who, after examining Porter, concluded he suffered from brain damage
that "substantially impaired his ability to conform his conduct to the law and suffered from
an extreme mental or emotional disturbance" as well as experiencing "substantial difficulties
in reading, writing, and memory." (17)

 The evidence Williams offers in support of his prejudice claim is decidedly weaker
than that in Porter and does not support the conclusion that there is a reasonable probability
that at least one juror would have answered the issues differently. Without weighing the
mitigating evidence against the case's "many aggravating factors," (18) the dissent's general
conclusion that the mitigation evidence found in the habeas record undermines the
confidence in the jury's imposition of the death penalty is akin to stating the evidence
appears to be mitigating and therefore could raise a conceivable likelihood of a different
result. (19) The Supreme Court has stated this type of analysis is insufficient. (20) 

 Based on the foregoing, I do not believe that Williams has shown resulting prejudice. 



DATE FILED: June 13, 2012

DO NOT PUBLISH
1. 466 U.S. 668 (1984).
2. Id. at 687. 
3. Strickland, 466 U.S. at 686-89. 
4. Id. at 694; accord Ex parte Gonzalez, 204 S.W.3d 391, 393-94 (Tex. Crim. App.
2006). 
5. Harrington v. Richter, 131 S. Ct. 770, 792 (2011) (quoting Strickland, 466 U.S.
at 693, 697) (citation omitted). 
6. Wiggins v. Smith, 539 U.S. 510, 537 (2003).
7. Id. at 534; accord Ex parte Martinez, 195 S.W.3d 713, 730 (Tex. Crim. App.
2006).
8. Porter v. McCollum, 130 S. Ct. 447, 453-54 (2009); Williams v. Taylor, 529
U.S. 362, 397-98 (2000). 
9. See Wiggins, 539 U.S. at 534. See, e.g., Ex parte Gonzalez, 204 S.W.3d at 399
(characterizing the applicant's relevant habeas evidence as "substantially greater and
more compelling" than what was presented at trial); Ex parte Martinez, 195 S.W.3d at
731 (characterizing the aggravating factors as "severe" and the omitted habeas evidence
as "strong"). 
10. Cf. Cullen v. Pinholster, 131 S. Ct. 1388, 1409-10 (2011) (judging duplicative
evidence less likely to affect an outcome if evidence of the same facts already has been
admitted).
11. Porter v. McCollum, 130 S. Ct. 447 (2009). 
12. Id.
13. Id. at 449.
14. Id.
15. Id. at 450. 
16. Id. at 451.
17. Id.
18. Post, at 18 (Alcala, J., dissenting).
19. See Harrington, 131 S. Ct. at 792 ("The likelihood of a different result must be
substantial, not just conceivable.")
20. Id.